# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY f/k/a STONEWALL INSURANCE COMPANY,<br><br>                  Plaintiff,<br><br>v.<br><br>GOODYEAR TIRE & RUBBER COMPANY,<br><br>                  Defendant. | JURY TRIAL DEMANDED<br><br>Civil Action No. _____<br><br><br>**COMPLAINT** |

Plaintiff, Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company through its undersigned counsel, for its Complaint against Defendant Goodyear Tire & Rubber Company, alleges as follows:

## **NATURE OF ACTION**

1. This is an action for declaratory judgment. Plaintiff seeks this Court's determination concerning the scope and nature of its obligations, if any, under an insurance policy issued to Defendant.

2. This case arises out of multiple underlying asbestos bodily injury claims and lawsuits (the "Underlying Claims") brought against Defendant, for which Defendant has sought or may seek reimbursement of defense costs and/or indemnification from Plaintiff.

3. In connection with the Underlying Claims, for which Defendant now claims or may claim coverage in the near future, an actual, justiciable controversy exists between the parties as to which a declaratory judgment setting forth their respective rights and obligations under the subject insurance policy is necessary and appropriate.

## THE PARTIES

4. Plaintiff Berkshire Hathaway Specialty Insurance Company f/k/a Stonewall Insurance Company ("Plaintiff" or "Stonewall") is an insurance company organized under the laws of Nebraska, having its principal place of business in Omaha, Nebraska. At all times relevant to this action, Stonewall was authorized to conduct business in the State of Ohio, including within the Northern District of Ohio.

5. Defendant Goodyear Tire & Rubber Company ("Goodyear" or "Defendant") is incorporated under the laws of the state of Ohio, having its principal place of business in Akron, Ohio.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this declaratory judgment action based upon 28 U.S.C. § 1332(a) because Plaintiff is not a citizen of the same state as Defendant and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

7. This Court also has jurisdiction over this declaratory judgment action under 28 U.S.C. § 2201, *et. seq.*

8. Venue is proper in this Court because Defendant is a resident of this judicial district for venue purposes pursuant to 28 U.S.C. § 1391(b)(1) and because Defendant regularly conducts business within this judicial district.

## THE UNDERLYING ASBESTOS BODILY INJURY CLAIMS

9. Thousands of bodily injury claims have been asserted by various private-party claimants (the "Underlying Claimants") for compensatory damages and other legal and/or equitable relief against Defendant Goodyear as a result of alleged exposure to asbestos containing products manufactured by Goodyear, including gaskets, floor tiles, furnace hoses, and heat shields (the "Underlying Claims").

10. Upon information and belief, there are approximately 62,000 claims currently pending against Goodyear, which have been filed in various states, including New York, Maryland, Texas, Florida, and Pennsylvania.

11. In general, the Underlying Claimants allege that they contracted various forms of asbestos-related injuries, including asbestosis, pleural plaques, bronchogenic carcinoma, and mesothelioma from exposure to Goodyear's asbestos containing products.

12. Defendant Goodyear has sought insurance coverage from the Plaintiff in connection with the Underlying Claims.

13. Defendant asserts that Plaintiff is obligated to defend, reimburse defense costs, and/or indemnify Defendant for past and future defense and/or indemnity costs that have been or will be incurred by Defendant in connection with the Underlying Claims.

## PLAINTIFF'S INSURANCE POLICY AT ISSUE

14. Defendant seeks coverage for defense and indemnity costs allegedly incurred and to be incurred in the future with respect to the Underlying Claims under a single excess insurance policy issued by Stonewall Insurance Company to Goodyear Tire & Rubber Company. This excess insurance policy, Policy No. 36000070, was effective for the period July 1, 1976 to July 1, 1977. The policy has a $1,000,000 per occurrence limit, which is in excess of the underlying insurance limits of $3,000,000 per occurrence (the "Stonewall Policy").

15. The Stonewall Policy is excess to certain insurance policies, including an insurance policy issued by Travelers Insurance Company, No. TCUP 106T300-9-76 (the "Travelers Policy"), which itself is in excess of a $1,500,000 per occurrence self-insured retention.

16. The Stonewall Policy generally follows form, except as otherwise stated therein, to the Travelers Policy.

17. The Stonewall Policy incorporates the Travelers Policy's definition of "occurrence," which is "an accident, including continuous or repeated exposure to conditions which results in *bodily injury or property damage* neither expected nor intended from the standpoint of the insured." (emphasis in original).

18. The Travelers Policy also includes the following provision:

> For purposes of determining the limit of the company's liability and the retained limit, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

19. Pursuant to the Stonewall Policy, defense costs are only covered, if at all and subject to the other terms, conditions, and exclusions of the Stonewall Policy, with the consent of the insurer. Specifically, the Stonewall Policy provides in relevant part:

> C. The insurance afforded by this Policy shall follow that of the Underlying Insurance except:
>
> > (1) Anything in the Policy or the Underlying Insurance to the Contrary notwithstanding, the company shall not be called upon to assume charge of the settlement or defense of any claim or suit brought, or proceeding instituted against the insured, but the company shall have the right and be given the opportunity to associate with the insured in the defense or control of any claim, suit, or proceeding which appears reasonably likely to involve the company, in which event the insured and the company shall cooperate in all things in the defense of such claim, suit or proceeding, but no obligation shall be incurred on behalf of the company without its consent being first obtained.
> >
> > (2) Loss and Costs
> >
> > > (a) Loss as used herein, shall be understood to mean the sums paid in settlement of losses for which the insured is liable after making deductions for all recoveries, salvage and other insurances (other than recoveries under the underlying insurance, policies of co-insurance, or policies specifically in excess

hereof), whether recovered or not, and shall exclude all "costs."

(b) The word "costs" as used herein, shall be understood to mean interest on judgments, investigation, adjustment and legal expenses including taxed court costs and premiums on bonds, for which the insured is not covered by the underlying insurance…

\* \* \*

(c) costs incurred by the insured, with the written consent of the company, shall be apportioned as follows:

> (i) In the event of claim or suit arising which appears likely to exceed the underlying insurance limit or limits, no costs shall be payable by the company.
>
> (ii) Should such claim or suit be settled previous to going into court for not more than the underlying insurance limit or limits, then no costs shall be payable by the company.
>
> (iii) Should, however the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limits, then the company, if it approves such settlement or consents to the proceedings continuing, shall contribute to the costs incurred by the insured in the ratio that its proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

\* \* \*

(4) To the extent said underlying insurance is inconsistent with the standard clauses of this policy.

(5) This policy shall not apply to liability for:

(a) The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or

-5-

> upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental; or the cost of removing or cleanup substances described above.

20. The Stonewall Policy further requires Goodyear to make a definite claim for a Loss within a fixed period of time:

> K. Liability under this policy shall not attach unless and until the Insured, or the Insured's underlying insurors [sic], shall have paid the limits of the underlying insurance. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within twelve (12) months after the insured's liability shall have been fixed and rendered certain either by final judgment against the insured after actual trial or by written agreement of the insured, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty days after they are claimed and provide in conformity within this policy.

## GOODYEAR'S DEMAND FOR COVERAGE

21. In or around November 2015, for the first time, Goodyear claimed that the applicable limits of the policies underlying the Stonewall Policy were exhausted, and that coverage under the Stonewall Policy was therefore triggered.

22. Goodyear further claimed that the exhaustion of the applicable limits of the policies underlying the Stonewall Policy had occurred in 2008 and demanded that Defendant reimburse Goodyear for Defendant's purported share of defense costs incurred with respect to the Underlying Claims since 2008, totaling several millions of dollars.

23. Prior to November 2015, Goodyear had never claimed exhaustion of the applicable coverage underlying the Stonewall Policy.

24. Further, Goodyear had at no point, prior to November 2015, sought Plaintiff's consent to defend, nor had Plaintiff consented to defend, the Underlying Claims under the Stonewall Policy.

25. Plaintiff has reimbursed certain post-November 2015 costs incurred by Goodyear with respect to the Underlying Claims under a complete reservation of rights.

## SUMMARY OF CLAIMS

26. A dispute exists between Plaintiff and Defendant regarding Plaintiff's obligation, if any, to defend and/or reimburse defense or indemnity costs incurred or to be incurred in connection with the Underlying Claims. Plaintiff contends that it has no such obligation for some or all of the Underlying Claims. Alternatively, if Plaintiff is found to have any such obligation, Plaintiff contends that this obligation is limited pursuant to the terms, conditions, and exclusions set forth or incorporated within the Stonewall Policy. Defendant disputes Plaintiff's contentions.

27. As such, an actual, immediate, and justiciable controversy exists between Plaintiff and Defendant concerning their respective rights and obligations, if any, under the Stonewall Policy with respect to the Underlying Claims.

28. Pursuant to 28 U.S.C. § 2201 *et seq.*, Plaintiff is entitled to a judicial determination concerning the scope and nature of its rights and obligations, if any, under the Policy with respect to the Underlying Claims.

## COUNT I

**Declaratory Judgment – (a) No Duty to Defend, Reimburse Defense Costs, or Indemnify Until All Applicable Underlying Limits Have Been Fully and Properly Exhausted for Each Underlying Claim**

29. Plaintiff incorporates herein by reference paragraphs 1 through 28 set forth above in this Complaint.

30. Plaintiff seeks a declaration that, under the express terms, conditions, and exclusions contained or incorporated within the Stonewall Policy, Plaintiff has no obligation, either in whole or in part, to defend, reimburse defense costs, or indemnify Defendant with respect to the Underlying Claims, which have been asserted, or which may be asserted against Defendant, to the extent that the applicable limits underlying the Stonewall Policy have not been fully and properly exhausted for each Underlying Claim.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(a) Declare that Plaintiff has no duty to defend the Underlying Claims;

(b) Declare that Plaintiff has no present obligation to defend or reimburse Defendant for its defense costs with respect to the Underlying Claims because the applicable limits underlying the Stonewall Policy have not been fully and properly exhausted;

(c) Declare that Plaintiff has no current obligation to indemnify Defendant for the Underlying Claims with respect to the Underlying Claims because the applicable limits underlying the Stonewall Policy have not been fully and properly exhausted;

(d) Award Plaintiff its costs; and

(e) Grant Plaintiff such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT II

**Declaratory Judgment – No Duty to Reimburse Defense or Indemnify Cost Incurred Prior to November 2015**

31. Plaintiff incorporates herein by reference paragraphs 1 through 30 set forth above in this Complaint.

32. An actual controversy exists between Plaintiff and Defendant regarding whether Plaintiff has a duty under the Stonewall Policy to reimburse defense or indemnity costs allegedly incurred by Defendant with respect to the Underlying Claims prior to November 2015.

33. Plaintiff seeks a declaration that, under the express terms, conditions, and exclusions contained or incorporated within the Stonewall Policy, Plaintiff has no obligation, either in whole or in part, to reimburse Defendant's defense or indemnify costs allegedly incurred by Defendant prior to November 2015 because, among other reasons, Defendant failed to request and obtain the consent of Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(a) Declare that under the express terms, conditions, and exclusions contained or incorporated within the Stonewall Policy, Plaintiff has no obligation, either in whole or in part, to reimburse any alleged defense or indemnity costs incurred by Defendant prior to November 2015 with respect to the Underlying Claims;

(b) Award Plaintiff its costs; and

(c) Grant Plaintiff such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT III

### Declaratory Judgment – Right to Recoupment

34. Plaintiff incorporates herein by reference paragraphs 1 through 33 set forth above in this complaint.

35. Plaintiff has reimbursed Defendant for certain post-November 2015 defense and indemnity costs incurred by Defendant with respect to the Underlying Claims.

36. Plaintiff seeks a declaration that, to the extent that it did not and does not have a duty to reimburse defense or indemnity costs to Defendant with respect to the Underlying Claims,

Plaintiff is entitled to recoup from Defendant those costs it has previously reimbursed under the Stonewall Policy.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(a) Declare that Plaintiff shall be entitled to recoup costs paid to Defendant to the extent Plaintiff had no and has no obligation to reimburse defense or indemnity costs incurred by Defendant with respect to Underlying Claims;

(b) Award Plaintiff its costs; and

(c) Grant Plaintiff such other and further relief as may be necessary and appropriate under the circumstances.

Respectfully submitted,

/s/ *John G. Farnan*
**JOHN G. FARNAN (0038558)**
Jfarnan@westonhurd.com
**MONICA L. FRANTZ (0090878)**
Mfrantz@westonhurd.com
**Weston Hurd LLP**
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114-1862
216.241.6602
Fax 216.621.8369


**SHANE R. HESKIN (pro hac vice pending)**
heskins@whiteandwilliams.com
White and Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-6205
**Attorneys for Plaintiff**